## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| | ) | **CIVIL ACTION NO.** |
| Plaintiff, | ) ) | |
| | ) | **JURY TRIAL DEMANDED** |
| v. | ) ) | |
| AMERICAN SECURITY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |
| | ) | |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices based on disability and to provide appropriate relief to Donna Stephens ("Stephens"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission ("EEOC" or "Plaintiff") alleges that American Security Insurance Company ("ASIC" or "Defendant") discriminated against Stephens and terminated Stephens's employment based on her disability in violation of the ADA.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

2.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division. Venue is proper in this Court under 28 U.S.C. § 1391.

## PARTIES

3.     Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. § 12117(a) and § 12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     At all relevant times, Defendant American Security Insurance Company (a subsidiary of Assurant, Inc.) had its principal place of business in

Atlanta, Georgia, conducted business in the State of Georgia, and has continuously had at least 15 employees.

6.      At all relevant times, Defendant has been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111 (7), which incorporate by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. § 2000e (g) and (h).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Stephens filed a charge of discrimination with the Commission alleging violations of the ADA by Defendant.

8.      On October 23, 2018, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.      On April 9, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.     On April 19, 2019, the Commission issued a Notice of Right to Sue to Stephens.  However, on June 5, 2019, the Commission revoked and rescinded the Notice to Stephens as it had been issued in error.

11.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12.     Since on or about January 2016, Defendant has engaged in unlawful employment practices at its location in Duluth, Georgia, in violation of Section 102 of  the ADA, 42 U.S.C. §12112(a) and (b).

13.     Stephens is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Stephens has physical impairments, including, but not limited to Type II Diabetes and congestive heart failure, that substantially limits her in the operation of major bodily functions, including functions of the endocrine system and cardiovascular system. In addition, Stephens's physical impairments have substantially limited other major life activities as defined by the ADA, including but not limited to, caring for herself, seeing, walking, standing, bending, and lifting.

14.     Stephens worked for Defendant for approximately 23 years.

15.     In 1994, Stephens began her employment with Defendant as a temporary employee.

16.    On or about September 1, 1997, Defendant hired Stephens as a full-time employee.

17.    Stephens held multiple positions with Defendant, including but not limited to, data processing clerk, team leader in customer service, and team leader in data processing.

18.    Stephens's last held position was senior processing clerk.

19.    Due to her many years of experience, Stephens spent several years training employees, although she was never officially in a supervisory role.

20.    During her employment, Stephens experienced a myriad of health issues. However, she always returned to work ready and able to perform her job duties.

21.    In 2010, Stephens suffered a stroke as a result of complications with her diabetes. Stephens returned to work after a short period of recovery.

22.    Approximately two years thereafter, Stephens suffered a second stroke. After a short period of recovery, Stephens returned to work.

23.    Then, in 2014, Stephens had a third stroke, and returned to work approximately six weeks later, after a period of recovery.

24.    As a result of the strokes, Stephens required the use of a walker or cane to ambulate.

25.     Accompanied by a note from her doctor, Stephens requested that she be permitted to telework as a reasonable accommodation for her disability.

26.     Defendant initially granted Stephens's telework request, and she began working from home in July 2014.

27.     Stephens worked from home for approximately one year without issue.

28.     Then, in 2015, Stephens was diagnosed with congestive heart failure and underwent quadruple bypass heart surgery.

29.     Stephens returned to work approximately eight weeks later, after a period of recovery.

30.     In December 2015, Defendant discontinued its teleworking program.

31.     Stephens reached out to her immediate supervisor to request that she be allowed to continue teleworking as an accommodation for her disability.

32.     Her immediate supervisor was unconcerned with her request and told her she had to work in the office like everyone else.

33.     Stephens contacted a representative in the Human Resources Department concerning her request for a reasonable accommodation.

34.     In February 2016, Stephens submitted additional medical paperwork to continue her accommodation and her request was approved by Human Resources.

35.    After Human Resources approved Stephens's request for an accommodation, her immediate supervisor was openly hostile and unreasonably critical of Stephens working from home.

36.    On or about June 3, 2016, Stephens's immediate supervisor called Stephens to question Stephens's quality and production numbers for the month. Notably, Stephens's quality number for the month of May exceeded Respondent's standard.

37.    Then, on or about June 6, 2016, Stephens's immediate supervisor called Stephens and told her that Defendant was terminating her employment for alleged poor performance.

38.    When Stephens asked why she was never warned that her performance warranted termination or given the opportunity to improve via a performance improvement plan, per Defendant's policies, Stephens's supervisor told her that she was not entitled to what other employees were entitled to because she worked from home.

39.    In addition, in comparison to other processors on Stephen's team, Stephens's scores were no worse and at times, higher than many of her team members who were not disciplined or discharged for poor performance. In fact, one processor had a score lower than Stephens's scores in two out of three areas; however, Defendant did not terminate that processor's employment.

40.     Based on the foregoing information, Defendant subjected Stephens to disparate treatment based on her disability.

41.     Defendant unlawfully terminated Stephens's employment because of her disability and her need for a reasonable accommodation.

42.     The effects of the practices complained of above have been to deprive Stephens of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

43.     The unlawful employment practices complained of above were intentional.

44.     The unlawful employment practices complained of above were done with malice and/or with reckless indifference to Stephens's federally protected rights.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from subjecting disabled employees to disparate treatment, terminating employees due to their disability, or otherwise engaging in any other employment practice that discriminates on the basis of disability;

B.     Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for all employees with disabilities and that eradicate the effects of its past and present unlawful employment practices;

C.     Order Defendant to make Stephens whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices described above, including but not limited to reinstatement;

D.     Order Defendant to make Stephens whole, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

E.     Order Defendant to make Stephens whole, by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices described above, including inconvenience, emotional pain and suffering, anxiety, stress, depression, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

F.     Order Defendant to pay Stephens punitive damages for its malicious and reckless conduct described above, in amounts to be determined at trial;

G.     Grant such further relief as the Court deems necessary and proper in the public interest; and

H.     Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its

Complaint.

Respectfully Submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

s/ Pamela E. Palmer
Pamela E. Palmer
Trial Attorney
Georgia Bar No. 882599
pamela.palmer@eeoc.gov

U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, GA 30303
(404) 562-6973  (direct dial)
(404) 562-6905 (facsimile)